FILED & ENTERED

JUL 15 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY kaaumoar DEPUTY CLERK

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SULA, INC.,<br><br><br><br>        Debtor(s). | Case No.: 2:15-bk-23350-WB<br><br>CHAPTER 11<br><br>**MEMORANDUM DECISION**<br><br>Date:      May 18, 2016<br>Time:     1:30 PM<br>Courtroom: 1375 |

This Court's order directing debtor Sula, Inc. ("Debtor"), Constantino Bandy, Jr. ("Constantino"), and Dennis Bandy ("Dennis") (collectively "Respondents") to appear and show cause why the Court should not find Respondents in contempt of this Court for failing to comply with Court Orders and why the Court should not impose sanctions on Respondents ("OSC") came on for hearing on May 18, 2016 at 1:30 p.m.  Appearances were made as noted on the record.  The Court, having considered its OSC and the responses thereto, the evidentiary record, and arguments of counsel, makes the following findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a)(1)[1], as incorporated into Fed. R. Bankr. P. 7052.

---

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse

I.   STATEMENT OF FACTS

On August 25, 2015, Debtor, a California Corporation, caused to be filed a voluntary petition for reorganization under chapter 11 of the Code. Constantino is the 100% shareholder and president of Debtor. Dennis is the manager of the corporation.

On March 1, 2016, Debtor filed a motion seeking to assume the lease of commercial real property located at 3220 West Temple Avenue, Pomona, California 91768 ("Property") with Investel Two, LLC ("Investel"). Debtor operates a restaurant and lounge on the Property. At a hearing on March 21, 2016, the Court denied the Debtor's motion to assume the lease of the Property based on findings of fact and conclusions of law made on the record.

On April 1, 2016, the Court entered an Order Denying Debtor's Motion to Assume Lease (the "April 1st order"). The April 1st order specifically provided, in pertinent part, that:

> … [P]ossession of the Commercial Property located at 3220 W. Temple Avenue, Pomona, CA 91768 is to be surrendered forthwith. Parties are to coordinate with each other in terms of the turnover of the premises and Debtor's removal of its personal property from the premises in an orderly fashion.[2]

On April 20, 2016, Investel filed an Emergency Motion for Further Order to Surrender the Premises by April 21, 2016, Walk Through on April 22, 2016, Remove Personal Property by April 26, 2016; or Permit Investel to Instruct the Los Angeles County Sheriff on a Date Certain to Execute a Writ of Possession ("Emergency Motion"). The Emergency Motion sought entry of a further order to the April 1st order on the basis that Debtor failed to agree on a date for Debtor to surrender possession of the Property to Investel. Instead, Debtor continued to host events on the Property.

On April 25, 2016, based upon the evidence presented to the Court, the Court issued an

---

Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P"). "L.R." references are to the Local Rules of the United States District Court for the Central District of California. "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California.

[2] Order Denying Debtor's Motion to Assume Lease of Sula Inc., p. 2, l. 3-6 (Doc. #167).

order without a hearing as follows:

1. Debtor shall surrender possession of the Property to Investel no later than Friday, April 29, 2016 at 3:00 p.m. By "surrender possession," it is meant that all personnel employees, officers, shareholders, managing agents, sub-tenants, concessionaires, licensees, or assignees of Debtor are removed from the premises and all keys, security devices and passwords are turned over directly to Investel in care of its attorney, Law Offices of Robert S. Altagen, Inc., 1111 Corporate Center Drive, Suite 201, Monterey Park, CA 91754.

2. On Monday, May 2, 2016 at 11:00 a.m., Debtor and Investel shall meet at the Property for inspection and inventory of any remaining personal property.

3. On Tuesday, May 3, 2016 and Wednesday, May 4, 2016, each day from 9:00 a.m. to 4:00 p.m., Debtor's movers may remove all the remaining personal property of Debtor from the Property, and the Property will otherwise be vacant of Debtor and Debtor's possessions by 4:00 p.m. on May 4, 2016.

4. If Debtor does not comply with the deadlines set forth above, Investel is authorized to instruct the Los Angeles County Sheriff's Department to proceed with eviction pursuant to the existing writ of possession of real property, with reference to the matter of Investel Two, LLC v. Sula, Inc., Case No. 15P00739. The matter will thereafter be governed by Investel's unlawful detainer judgment and California state law.[3]

(the "April 25th order").

On May 3, 2016, Investel filed another Emergency Motion to Amend the Court's Order (the "Second Emergency Motion"). The Second Emergency Motion sought entry of an order amending the court's April 25th order to authorize the United States Marshal (the "U.S. Marshal") and other law enforcement agency personnel to immediately evict Debtor from the Property based upon Debtor's continued failure to comply with the April 25th order.

---

[3] Order Granting Emergency Motion for Further Order to Surrender the Premises, p. 2, l. 9-20; p. 3, l. 1-6 (Doc. #173).

Main Document    Page 4 of 11

On May 5, 2016, the Court held a hearing on the Second Emergency Motion. At the hearing, Debtor's counsel of record, Giovanni Orantes ("Debtor's Counsel"), informed the Court that the Court's Orders were provided to Debtor's principals, Constantino and Dennis, and that they were aware of the terms of the orders. However, Debtor's Counsel could not offer an explanation as to why Debtor would not comply with the Court's Orders. Accordingly, the Court granted the relief requested in the Second Emergency Motion and an order was entered allowing Investel to utilize the U.S. Marshal's Service to immediately evict Debtor from the Property.

Based on Debtor's repeated failure to vacate the Property, on May 13, 2016 the Court *sua sponte* issued an OSC directing Debtor, Constantino and Dennis to appear on May 18, 2016, and to show cause why Respondents should not be found in civil contempt of this Court for failing to surrender possession of the Property to Investel and sanctioned for failure to comply with the Court's Orders.

On May 16, 2016, Investel filed a Declaration of Robert S. Altagen ("Altagen" or "Investel's Counsel"), in which Altagen testifies he expended 16.42 hours, totaling $6,058.50 in fees, related to Debtor's failure to comply with the Court's Orders. Altagen alleged, in pertinent part, time was spent on communicating with Debtor's Counsel in attempts to coordinate the time for Debtor's move out, preparation and prosecution of two emergency motions and multiple meetings with the U.S. Marshal's Office. Additionally, Altagen asserts Investel incurred $1,500.00 in costs associated with the processing fee for the U.S. Marshal to evict Debtor. Further, Debtor did not pay the $12,000.00 per month rent for the months of April and May 2016.

On May 17, 2016, Debtor filed a Declaration of Dennis C. Bandy dated May 17, 2016, in which Dennis states under penalty of perjury that Debtor had completely vacated the Property and delivered the keys to Investel, through its security personnel, on May 16, 2016.

At the OSC hearing on May 18, 2016, Investel's Counsel confirmed that Debtor had vacated the premises and surrendered possession of the Property on May 16, 2016. Debtor's counsel argued that Dennis had interpreted the April 25th order to mean that paragraph 4

governed the Debtor's move out which was why Debtor did not comply with the deadlines set forth by the Court. Paragraph 4 permitted Investel to proceed with the eviction process as governed by Investel's unlawful detainer judgment in order to obtain possession of the Property.

## II. DISCUSSION

*A. Civil Contempt*

It is well settled that bankruptcy courts are vested with inherent authority to enforce compliance with their orders through the issuance of civil contempt orders:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Fed. R. Bankr. P. 9020; *see, e.g., ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.),* 450 F.3d 996, 1007 (9th Cir. 2006) ("A party who knowingly violates the discharge injunction can be held in contempt under section 105(a) of the bankruptcy code."); *Knupfer v. Lindblade* (*In re Dyer* ), 322 F.3d 1178, 1189-90 (9th Cir. 2003) ("Although the availability of civil contempt sanctions under § 105(a) has a checkered past in our circuit, the recent precedent makes clear that this remedy is available." (footnote omitted)); *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 507 (9th Cir. 2002) (holding that § 524(a) may be enforced by the bankruptcy court's contempt power under § 105(a)); *State of Cal. Employment Dev. Dep't. v. Taxel (In re Del Mission Ltd.),* 98 F.3d 1147, 1152 n. 5 (9th Cir. 1996) (observing that § 105(a) "is the authority that authorizes a bankruptcy court to award sanctions for ordinary civil contempt"); *Havelock v. Taxel (In re Pace),* 67 F.3d 187, 193 (9th Cir. 1995) (holding that "a trustee can recover damages in the form of costs and attorney's fees under section 105(a) as a sanction for ordinary civil contempt").

Punishment for civil contempt must be either coercive or compensatory.[4] *In re Dyer,* 322 F.3d at 1192; *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,* 244 F.3d 1128, 1137–38

---

[4] Criminal or punitive sanctions may not be imposed by a bankruptcy court under § 105(a). *Dyer,*

(9th Cir. 2001); *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 778 (9th Cir. 1983); *Oliner v. Kontrabecki,* 305 B.R. 510, 520 (N.D. Cal. 2004), *appeal dism'd,* 158 Fed.Appx. 1, 2005 WL 3046363 (9th Cir. 2005). Civil contempt sanctions must be wholly remedial and serve either to coerce an individual into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance. *See, e.g., Int'l Union United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 829 (1994); *United States v. United Mine Workers of Am.,* 330 U.S. 258, 303–04; *Falstaff,* 702 F.2d at 778.

In a proceeding for civil contempt, the movant must establish "by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City & County of S.F.,* 968 F.2d 850, 856 n. 9 (9th Cir. 1992) (citations omitted), *cert. denied,* 506 U.S. 1081 (1993)); *see, e.g., Reno Air Racing Ass'n, Inc. v. McCord,* 452 F.3d 1126, 1130 (9th Cir. 2006) (" 'Civil contempt ... consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.' " (quoting *Go–Video, Inc. v. The*

---

322 F.3d at 1192; *Price v. Lehtinen (In re Lehtinen),* 332 B.R. 404, 412 (9th Cir. BAP 2005). " 'Criminal contempt is a crime in the ordinary sense.' " *Bagwell,* 512 U.S. at 826 (quoting *Bloom v. Illinois,* 391 U.S. 194, 201, (1968)). In *Hicks v. Feiock,* the Supreme Court distinguished the nature of the relief available in criminal and civil contempt actions, explaining:

> [T]he critical features are the substance of the proceeding and the character of the relief that the proceeding will afford. "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's order," and is punitive if "the sentence is limited to imprisonment for a definite period." If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order. These distinctions lead up to the fundamental proposition that criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of criminal proceedings, including the requirement that the offense be proved beyond a reasonable doubt.

485 U.S. 624, 632–33 (1988) (quoting *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 442–44 (1911)) (internal citations omitted).

*Motion Picture Ass'n of Am. (In re Dual–Deck Video Cassette Recorder Antitrust Litigation),* 10 F.3d 693, 695 (9th Cir. 1993)); *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885, 889 (9th Cir. 1982) (observing that the standard for civil contempt is "clear and convincing evidence"); *Balla v. Idaho State Bd. of Corrections,* 869 F.2d 461, 465 (9th Cir. 1989) (stating that civil contempt may be found when a party fails to comply with an order that is both specific and definite)).  The court is not required to find that a party willfully or intentionally failed to comply, nor is "good faith" a defense.  *See, e.g., In re Dual–Deck Video Cassette Recorder Antitrust Litigation,* 10 F.3d 693, 695 (9th Cir. 1993) (stating that "there is no good faith exception to the requirement of obedience to a court order"); *Crystal Palace Gambling Hall, Inc. v. Mark Twain Indus., Inc. (In re Crystal Palace Gambling Hall, Inc.),* 817 F.2d 1361, 1365 (9th Cir. 1987) (opining that "the contempt need not be willful" and that a " 'good faith' exception to the requirement of obedience to a court order has no basis in law"); *General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir. 1986) ("Failure to comply need not be intentional."); *Donovan v. Mazzola,* 716 F.2d 1226, 1240 (9th Cir. 1983) ("Intent is not an issue in civil contempt proceedings.").

Incarceration is an appropriate coercive sanction for civil contempt so long as "the contemnor can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the original order." *Hicks,* 485 U.S. at 635 n. 7. "When the petitioners carry 'the keys of their prison in their own pockets,' the action 'is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees.' " *Shillitani v. United States,* 384 U.S. 364, 368 (1966) (citations omitted).

Alternatively, a fine for civil contempt may be imposed either to coerce further compliance with a court order issued for another party's benefit or to compensate for any harm that previously resulted from the contemnor's past noncompliance. *See, e.g., Bagwell,* 512 U.S. at 829; *United Mine Workers of Am.,* 330 U.S. at 303–04; *Falstaff,* 702 F.2d at 778. Compensatory sanctions must be limited to actual damages incurred as a result of the violation. *See, e.g., United Mine Workers of Am.,* 330 U.S. at 304 (stating that a compensatory fine must "be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the

compensatory fine is dependent upon the outcome of the basic controversy"); *Crystal Palace,* 817 F.2d at 1366 (observing that "an award to an opposing party is limited by that party's actual loss"); *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1148 (9th Cir.1983) (stating that compensatory awards are limited to "actual losses sustained as a result of the contumacy"). Actual loss includes attorney's fees and costs incurred in securing compliance with the order. *Dyer,* 322 F.3d at 1195 (stating that "attorneys fees are an appropriate component of a civil contempt award"); *Portland Feminist Women's Health Center v. Advocates for Life, Inc.,* 877 F.2d 787, 790 (9th Cir. 1989) (upholding an award of costs incurred litigating the contempt proceeding, including reasonable attorney's fees, as a remedial sanction); *Perry v. O'Donnell,* 759 F.2d 702, 705 (9th Cir. 1985) (concluding that "an award of fees and expenses is appropriate as a remedial measure").

Inability to comply with the court's order is a defense to civil contempt. *United States v. Rylander,* 460 U.S. 752, 757 (1983) ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action."); *Affordable Media,* 179 F.3d at 1239 (stating that "[a] party's inability to comply with a judicial order constitutes a defense to a charge of civil contempt"). The burden is on the contemnor to establish " 'categorically and in detail' " why he has the present inability to comply with the court's order. *Affordable Media,* 179 F.3d at 1241 (quoting *N.L.R.B. v. Trans Ocean Export Packing, Inc.,* 473 F.2d 612, 616 (9th Cir. 1973)); *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1481 (9th Cir. 1992) (stating that the contemnor must establish "that it is '*factually impossible* ' to comply with the ... order" (emphasis in original)); *Oliner,* 305 B.R. at 520 (opining that "the burden is on the alleged contemnor to show 'categorically and in detail' why he is unable to comply"). The defense is not available, however, "when the person charged is responsible for the inability to comply." *United States v. Asay,* 614 F.2d 655, 660 (9th Cir. 1980) ("Self-induced inability is not a defense to a contempt proceeding.")

*B. Duties of Persons in Control of a Corporation*

When the debtor is a corporation, persons in control of a corporation may be held in contempt for violating a court order. The law is clear that those who control an organization may be held liable if they fail to take appropriate action to ensure compliance with a court order:

> A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F. 3d 935, 955 (9th Cir. 2014) (citing *Wilson v. United States,* 221 U.S. 361, 376 (1911)).

*C. Violation of Court Orders*

In this case, it is undisputed that Debtor, Constantino and Dennis were on notice of the Court's Orders as affirmed by Debtor's Counsel at the May 5, 2016 hearing. Additionally, the Court's Orders were both direct and specific. The April 1st order required Debtor to coordinate with Investel on a date to surrender possession of the Property to Investel. When Debtor failed to agree on a move out date and continued to occupy the Property and host events, the April 25th order was specific and definite in requiring Debtor to surrender possession of the Property to Investel by no later than April 29, 2016 at 3:00 p.m. Constantino and Dennis, as persons in control of Debtor corporation, violated the April 25th order by failing to comply with the deadlines set forth by the Court.

*D. Defenses*

Dennis offers several defenses for Debtor's failure to comply with the Court's Orders. First, Dennis contends that pursuant to the April 25th order, paragraph 4 was controlling and that Debtor could remain on the Property up and until Investel had the Los Angeles County Sheriff's Department successfully evict Debtor from the Property. This interpretation is incorrect. Debtor may not simply disregard the deadlines specifically set forth by the Court, remain on the

-9-

Property and continue to hold events simply because the Court had granted secondary relief to Investel. Debtor was required to obey the Court's April 25th order and surrender possession of the Property to Investel by April 29, 2016.

In addition, Dennis argues that contempt sanctions are unwarranted; however, because Debtor did not have the funds to pay a moving company. Dennis contends he moved Debtor out as soon as it was possible. Constantino and Dennis, along with the help of one other family member, made sixteen trips to complete the move as they received no help from any of Debtor's former employees. In this case, having insufficient funds to execute a timely move is not a defense to failure to obey a court order. As the persons in control of the party to whom the April 25th order was directed, Constantino and Dennis were obligated to have Debtor vacate the premises by the mandated Court deadlines and should have simply moved Debtor out by said deadlines. Further, Constantino and Dennis were initially ordered to turn over the premises in the April 1st order. There should have been sufficient time to arrange for the move in a timely fashion.

Lastly, Dennis argues that because the principals have invested "hundreds of thousands of dollars of our personal funds in upgrades […] that we will never recover…" the Court should not impose any further sanctions.[5] Dennis is again off the mark, since the historical investment data of Debtor's principals are irrelevant.

The Court finds that Debtor, Constantino and Dennis are in civil contempt of Court for failing to take appropriate action to timely surrender possession of the Property to Investel in violation of the April 25th order. It is appropriate for the Court to impose monetary sanctions in connection with this order for contempt. Thus, the Court imposes monetary sanctions against Debtor, Constantino and Dennis in the amount of $7.558.50. In reaching this figure, the Court considered the attorney's fees incurred by Altagen in (1) communicating with Debtor's Counsel in attempts to coordinate Debtor's move out time, (2) bringing the two emergency motions, and (3) the multiple meetings with the U.S. Marshal's Office; and the fee advanced by Investel to the U.S. Marshal. The civil contempt sanctions serve to compensate Investel for actual losses

---

[5] Declaration of Dennis Bandy, at p. 3, l. 25-27 (Doc. #200).

resulting from Debtor's failure to comply with the Court's Orders. The Court discharges the OSC as moot with respect to the potential incarceration of Constantino and Dennis since they turned over possession of the Property on May 16, 2016 prior to the hearing.

A separate order will be entered consistent with this memorandum.

###

Date: July 15, 2016

*Julia W Brand*
Julia W. Brand
United States Bankruptcy Judge